**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | SA-18-CV-00373-XR |
| ARTHUR DALE LOTHRINGER, JANET<br>LYNN LOTHRINGER, PICK-UPS, INC.,<br>BEXAR COUNTY, TEXAS,<br>*Defendants*. | §<br>§<br>§<br>§<br>§ | |

## ORDER ON SUMMARY JUDGMENT

On this date, the Court considered Plaintiff's Motion for Summary Judgment (ECF No. 64), Defendants' Response (ECF No. 66), and Plaintiff's Reply (ECF No. 68). After careful consideration, the Court will **GRANT** the motion.

## BACKGROUND

This is a federal tax collection suit brought by Plaintiff United States of America ("Government") against Defendants Arthur Dale Lothringer ("Mr. Lothringer"), Janet Lynn Lothringer ("Mrs. Lothringer"), and Pick-Ups, Inc. ("Pick-Ups"). According to the Government, Pick-Ups owes a total of $1,777,047.98[1] in federal income tax, federal employment tax, penalties, and accrued interest for the tax years 2006, 2007, and 2008. The Government asks this Court to (1) reduce the tax assessments to a judgment that Pick-Ups is liable, (2) foreclose federal tax liens against properties titled to the Lothringers, (3) determine that Pick-Ups is the alter ego of Mr. Lothringer and impose the tax liabilities upon him, and (4) determine that Mr. Lothringer is liable

---

[1] This amount is the balance allegedly owed as of April 15, 2020. ECF No. 64 at 9. The Government's complaint originally alleged Pick-Ups owed $1,533,980.18 as of April 1, 2018. ECF No. 1 at 4.

for Pick-Ups' taxes under the Texas Tax Code. ECF No. 1 at 7–9. The Government has moved for summary judgment, urging that there is no genuine issue of material fact on any of these counts, and additionally requesting that the Court award Mrs. Lothringer a homestead interest out of the sale of the Lothringers' residential real property. ECF No. 64 at 7. The relevant factual background to this case is long and as follows.

## I.     The business and operations of Pick-Ups

Pick-Ups was incorporated in 1994 by Mr. Lothringer with the Texas Secretary of State for the purpose of "selling and financing used pickup trucks." ECF No. 64-16. Mr. Lothringer was the president and the sole officer, director, and shareholder of Pick-Ups at all times. ECF No. 64-18; ECF No. 64-14, Deposition of Arthur Lothringer [hereinafter, "Lothringer Dep."] 23:24–24:9. Pick-Ups operated several used car lots in San Antonio, Texas from 1994 through 2011. Lothringer Dep. 23:10–13.

Only a couple of points are relevant in the early years of Pick-Ups' operations.  First, from the very beginning, Pick-Ups failed to comply with requirements of the Texas Tax Code: for the years 1994–2002, 2008, 2010, and 2011, Pick-Ups failed to file Texas Franchise Public Information Reports with the Texas Secretary of State.[2] ECF No. 64-19 ¶ 6. Second, between 2003 and 2008, Mr. Lothringer's brother, Michael Lothringer, loaned over $260,000 to Pick-Ups. ECF No. 64-26, Deposition of Michael Lothringer [hereinafter, "MLothringer Dep."] 9:21–10:13. Mr. Lothringer claimed at one point that he sold Pick-Ups in 2007, but that he continued to operate as if he were still the owner, with the same title, role, and responsibilities through 2011. ECF No. 64-19 ¶ 11.

---

[2] Each taxable entity formed in Texas or doing business in Texas—including corporations like Pick-Ups—must file and pay franchise tax. *See* https://comptroller.texas.gov/taxes/publications/98-806.php. The calculation of the tax, and the annual report filing requirement, are controlled by Section 171 of the Texas Tax Code.

Pick-Ups maintained an active bank account with the International Bank of Commerce through 2012. That account shows that in 2009, Pick-Ups deposited over $2.2 million; in 2010, over $2.4 million; in 2011, over $680,000; and in 2012, only $4,210. ECF No. 64-19 ¶ 14. Similarly, Uniform Commercial Code ("UCC") records show transactions reflecting income for Pick-Ups during both 2009 and 2010 in excess of $2 million per year, and over $600,000 in 2011. ECF No. 64-19 ¶ 8.

By 2011, Pick-Ups was getting into trouble not just with the IRS (explained in more detail below), but also in the state of Texas. Sometime in 2011, while still operating Pick-Ups, Mr. Lothringer became the subject of a criminal investigation into Pick-Ups that resulted in two felony indictments against him in 2013.[3] ECF No. 64-28. On May 23, 2011, the Texas Department of Motor Vehicles revoked Pick-Ups' dealer license. ECF No. 64-19 ¶ 9. According to Mr. Lothringer, Pick-Ups "shut down" on May 31, 2011. Lothringer Dep. 21:6–7. On July 29, 2011, the Texas Secretary of State forfeited the charter of Pick-Ups pursuant to Section 171.309 of the Texas Tax Code. ECF No. 64-14. According to the Government, despite the revocation of Pick-Ups' dealer license in 2011, Mr. Lothringer continued to operate Pick-Ups' business through calendar year 2014 "under multiple names and nominees." ECF No. 64-19 ¶ 9.

## II.     Pick-Ups' tax troubles

It seems that for several of the years Pick-Ups was in business, it had persistent trouble with its federal taxes. Pick-Ups failed to file federal income (Form 1120) tax returns with the IRS for the years 2008, 2009, 2010, and 2011. ECF No. 64-19. The tax liabilities that are relevant here are from tax years 2006, 2007, and 2008.

---

[3] The indictments against Mr. Lothringer were for (1) providing false or incorrect information on an application for a certificate of title, and (2) agreeing to transfer a motor vehicle under $20,000 to a third party without first obtaining written authorization from the lienholder, and for fraud in the sale of that vehicle. Mr. Lothringer signed a plea bargain to resolve both cases on November 12, 2013.

For the year 2006, Mr. Lothringer late-filed an income (Form 1120) tax return for Pick-Ups with the Internal Revenue Service ("IRS") on October 22, 2007. ECF No. 64-9. Mr. Lothringer disclosed gross receipts or sales of $17,469,568 and assets of $2,650,918, but taxable income of only $9,269 and total tax of $1,457. *Id.* An IRS audit of Pick-Ups' 2006 income tax return disagreed and found a revised taxable income of $4,390,207, total additional tax due of $1,491,280, plus total penalties of $447,523. ECF No. 64-5 at 4. (This $1.9 million bill allegedly owed forms the basis of the majority of the Government's present complaint.)

In 2009, the Government also assessed taxes owed by Pick-Ups for unpaid federal employment (Form 941) tax for the last quarter of 2007 and the first quarter of 2008. The record reflects that a few partial payments were made, additional penalties were assessed, and interest accrued on the Form 941 tax due. In 2010, the IRS assessed civil penalty (Section 6721) taxes against Pick-Ups for the 2007 tax year, which also accrued interest.

### III.    The Tax Court litigation

On September 21, 2011, the massive income taxes and penalties Pick-Ups allegedly owed from 2006 came calling when the IRS issued a statutory notice of deficiency, notifying Pick-Ups it owed $1,938,803 for the year 2006. ECF No. 64-5 at 1. Pick-Ups contested this proposed tax deficiency by filing a petition against the Commissioner of Internal Revenue in the U.S. Tax Court on December 9, 2011 (the "Tax Court case").[4] ECF No. 64-10. According to Pick-Ups' petition, the assessed tax deficiency for 2006 was wrong because the "audit results did not reflect loss on sale notes." *Id.* at 5. Pick-Ups requested a trial in San Antonio, Texas, which was set for November 5, 2012. *Id.* at 22.

---

[4] Mr. Lothringer does not remember filing a petition or lawsuit related to the 2006 tax deficiency, but he admitted in deposition testimony that it is his handwriting and signature on documents related to that lawsuit. Records of the Tax Court case reflect that Pick-Ups proceeded *pro se*. ECF No. 64-10.

The Commissioner filed a pretrial memorandum, in which he conceded an adjustment to Pick-Ups' 2006 income of $2,020,171.151. ECF No. 64-4 at 67. As a result, the memorandum stated Pick-Ups' total tax liability was reduced from $1.93 million to $1,045,748.69. *Id.* The memorandum explains that during the audit of Pick-Ups' 2006 income tax return, Mr. Lothringer told the IRS that he "sold notes receivable at a discount to third-party finance companies," and that if the third-party company could not collect on the note after a certain period of time, Pick-Ups "was required to buy back the note." ECF No. 64-4 at 69. Mr. Lothringer further explained that he would "then typically re-sell the note to other finance companies," resulting in losses on the notes. *Id.* Because the losses were not reported on Pick-Ups' 2006 return, and because (according to the IRS) Pick-Ups "failed to provide sufficient information regarding these sales during the audit," the IRS did not allow any losses when calculating Pick-Ups' taxable income. *Id.*

During discovery in the Tax Court case, Mr. Lothringer provided an analysis of the discount on the notes sold and supporting spreadsheets to support Pick-Ups' claim of $5,610,883.99 in losses as a result of discounted notes in 2006. *Id.* The Commissioner requested additional information to support the claimed losses, which Mr. Lothringer stated he could provide by September 6, 2012. *Id.* at 70. On August 22, 2012, the Commissioner issued written discovery requests to Pick-Ups. *Id.* Pick-Ups failed to timely respond within 30 days, and so the Commissioner claimed that Pick-Ups was deemed to have admitted that all adjustments to income in the notice of deficiency were not disputed, and that the only issue in dispute was the $5,610,883.99 in losses from the sale of notes. *Id.* On October 10, Mr. Lothringer provided supporting documents showing the terms of the sales of notes. *Id.* The Commissioner's review of the information provided showed the notes were not as discounted as Pick-Ups claimed, and that Pick-Ups was entitled to losses of $2,020,171.51. *Id.* at 71.

The Tax Court case was called on November 5, 2012, the parties were heard, and the Tax Court ordered the parties to either submit a stipulated decision document or file a written status report. In a written status report filed on May 3, 2013, the Commissioner informed the Tax Court that he had proposed a decision document to Pick-Ups but that Pick-Ups "had not decided whether or not to execute the decision." ECF No. 64-10 at 20. The Commissioner also told the Tax Court that there had been "no communication" with Pick-Ups and that he intended to file a motion for entry of decision. *Id.* The Tax Court gave the parties until June 7, 2013 to furnish decision documents. *Id.* They did not do so. Instead, on June 6, the Commissioner filed a Motion to Dismiss for Lack of Prosecution. *Id.* The Tax Court granted that motion on June 12, 2013, and further:

> ORDERED and DECIDED that there is a deficiency in income tax due from [Pick-Ups] for the taxable year 2006 in the amount of $610,917.00;
>
> That there is an addition to tax due from [Pick-Ups] pursuant to section 6651(a)(1), I.R.C., for the taxable year 2006 in the amount of $61,230.70; and
>
> That there is penalty due from [Pick-Ups] pursuant to section 6662(a), I.R.C., for the taxable year 2006 in the amount of $122,183.40.

*Id.* at 21. The Tax Court decision was not appealed.

On October 29, 2013, the IRS assessment records for the 2006 income taxes owed by Pick-Ups were adjusted to reflect an assessment of $610,917.00 plus a $61,230.70 late filing penalty, a $122,183.40 accuracy penalty—all the exact amounts ordered by the Tax Court decision—and $273,685.83 in interest accrued. ECF No. 64-2 at 17.

## IV.    Tax liens on the Lothringers' properties

On September 30, 2014, a notice of federal tax lien was filed against Pick-Ups for all of the subject taxes with the County Clerk of Bexar County, Texas. ECF No. 64-3. The same was filed with the Texas Secretary of State on October 2, 2014, and various liens have been refiled since that time. *Id.* On September 3, 2015, a notice of federal tax lien was

filed against Mr. Lothringer (as alter ego of Pick-Ups) with the Bexar County Clerk. *Id.* These liens encumber all properties or rights to properties owned by Pick-Ups or Mr. Lothringer for the amount of the taxes, and additional penalties, interest, and costs that may accrue. *Id.*

The Government is interested in two subject pieces of property in this case: (1) real estate owned by the Lothringers in San Antonio, Texas; and (2) a permit that gives Mr. Lothringer the exclusive right to use a fishing cabin in Kenedy County, Texas. ECF No. 64 at 6. As to the first, the Lothringers own two contiguous lots of property in San Antonio, located at 122 Jo Marie Street and 114 Jo Marie Street. ECF No. 64-11. At 122 Jo Marie Street, the Lothringers have their homestead and principal residence, which is 2,370 square feet, sits on slightly less than one acre, and has a 2019 tax-assessed value of $207,863. ECF No. 64-12. The lot at 114 Jo Marie Street is also slightly less than one acre and has a 2019 tax-assessed value of $39,930. ECF No. 64-13. The cabin permit, which Mr. Lothringer inherited from his father, gives him the exclusive right to use cabin number PC1149, located on State Tract 241 on the Laguna Madre waterway in Kenedy County, Texas. ECF No. 64-15. Mr. Lothringer renewed the permit on April 1, 2016 for a term of five years, which expires on March 31, 2021. *Id.*

## DISCUSSION

### I.   Summary Judgment Standard

A court will grant summary judgment if the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, demonstrate that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 323). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams*, 465 F.3d at 164; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).

The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Mere conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, and hearsay evidence (unless within a recognized exception) are not competent summary judgment evidence. *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, and must review all facts in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby*, 477 U.S. 242, 254–55 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

## II.    Application

###   a. As a matter of law, the United States is entitled to a judgment against Pick-Ups for federal income, employment, and civil penalty taxes in the total amount of $1,777,047.98.

The Government argues that it is entitled to a judgment against Pick-Ups in the amount of $1,777,047.98 for 2006–2008 income, employment, and civil penalty tax, plus penalties, statutory additions, and prejudgment and post-judgment interest thereon from April 15, 2020 until paid. ECF No. 64 at 12. According to the Government, the record evidence establishes the taxes owed; the IRS Form 4340 "is presumptive proof of a valid assessment if the taxpayer produces no evidence to counter the presumption"; and the income (Form 1120) tax liability was determined by the Tax Court litigation and is res judicata. ECF No. 64 at 12 (citing Government exhibits, *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992), and *United States v. Teal*, 16 F.3d 619, 621–22 (5th Cir. 1994)).

Defendants respond that the income (Form 1120) tax liability determined in the Tax Court litigation is incorrect and not res judicata. ECF No. 66 ¶ 1. Defendants contend that because the Tax Court litigation was resolved by a dismissal for lack of prosecution, it was not a final judgment on the merits, and is distinguishable from *Teal*. *Id.* Defendants "did not have a full and fair opportunity to contest the tax liabilities" due to "complications and confusion between Defendants' attorneys" and because "Defendants did not possess the necessary resources needed to litigate the matter." *Id.* Defendants do not point to any evidence to counter the presumption of a valid assessment raised by the Government's IRS Forms 4340.

###         i. *The 2006 income (Form 1120) tax liability determined by the Tax Court is res judicata.*

"Claim preclusion, or 'pure' res judicata, is the 'venerable legal canon' that insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple

9

lawsuits." *United States v. Evans*, 513 F. Supp. 2d 825, 839 (W.D. Tex. 2007) (citing *Medina v. I.N.S.*, 993 F.2d 499, 503 (5th Cir. 1993)). Claim preclusion requires four conditions: (1) the parties in a later action must be identical to (or at least in privity with) the parties in a prior action; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits. *Eubanks v. Federal Deposit Ins. Corp.*, 977 F.2d 166, 169 (5th Cir. 1992). Here, there is no question that all four elements are met. Both Pick-Ups and the Government were parties to the Tax Court litigation and this case; the Tax Court was a court of competent jurisdiction; the Tax Court's dismissal and decision was a final judgment on the merits; and the same claim—the correctness of the 2006 income (Form 1120) tax assessment against Pick-Ups—was at issue there and is at issue here.

Defendants' position—that because the Tax Court litigation ended with a dismissal for lack of prosecution it is therefore not a final judgment on the merits—is plainly wrong. When a petitioner fails to properly prosecute a case, the Tax Court has the power to "dismiss a case at any time and enter a decision against the petitioner" and to "decide against any party any issue as to which such party has the burden of proof." U.S. TAX CT. R. 123(b); *see also Taylor v. Comm'r*, 271 F. App'x 414, 415–16 (5th Cir. 2008) (affirming Tax Court's dismissal for failure to prosecute). Such a dismissal "shall operate as an adjudication on the merits." U.S. TAX CT. R. 123(d); *see also Pena v. United States*, 883 F. Supp. 154, 157–58 (S.D. Tex. 1994), *aff'd*, 66 F.3d 320 (5th Cir. 1995) (granting motion for summary judgment because taxpayers' claims were barred by res judicata following dismissal for lack of prosecution in Tax Court); *see also Matter of Teal*, 16 F.3d 619, 622 (5th Cir. 1994) (holding agreed judgment entered by tax court qualified as an "adjudication" for res judicata purposes).

Here, Pick-Ups brought its petition to challenge the correctness of the 2006 income (Form 1120) tax assessment in the Tax Court litigation. Pick-Ups participated in the case to some extent, but then failed to submit decision documents or otherwise comply with the Tax Court's orders, resulting in the court granting the Government's motion to dismiss. ECF No. 64-10 at 20–21. As it was empowered to do under the Tax Court's Rules of Practice and Procedure, the Tax Court decided there was a deficiency in income tax due from Pick-Ups for 2006 in the amount of $610,917, and that there were additional penalties due from Pick-Ups in the amount of $183,414.10. *Id.* at 21. Pickups "had the full and fair opportunity to contest the assessed penalties" in the Tax Court litigation. *Teal*, 16 F.3d at 622. And as in *Pena*, Pick-Ups "could have appealed the Tax Court's decision to the Fifth Circuit," but "they chose not to do so." *Pena*, 883 F. Supp. at 156. "Therefore, the Tax Court's decision is final and binding," and the "relitigation of [Pick-Ups'] tax liability for the year [2006] is barred as a matter of law." *Id.* at 156, 157.

> ii. *The Government has met its summary judgment burden to demonstrate Pick-Ups' tax liability of $1,777,047.98.*

It is well-established that a Form 4340 Certificate of Assessment creates a presumption of a valid tax assessment. *See U.S. v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992) (Form 4340 "has been held to be presumptive proof of a valid assessment where the taxpayer has produced no evidence to counter that presumption"). Where the taxpayer fails to rebut this presumption, the Government is entitled to summary judgment. *See U.S. v. Spacek*, 30 F.3d 1492 (5th Cir. 1994) (dismissing appeal of summary judgment where Form 4340 was "presumptive proof of a valid assessment" and taxpayer "produced no evidence to rebut the presumption that the assessments filed against him are valid").

 Here, the Government presents Forms 4340 for the four groups of taxes it alleges Pick-Ups owes: the 2006 income (Form 1120) tax, the fourth quarter 2007 employment (Form 941) tax,

the first quarter 2008 employment (Form 941) tax, and the 2007 civil (Section 6721) penalty.

Those records create a presumption of a valid assessment, as of February 12, 2020, in the following

amounts:

| | |
|---|---:|
| 2006 income (Form 1120) tax | $1,365,425.07 |
| Q4 2007 employment (Form 941) tax | $16,899.43 |
| Q1 2008 employment (Form 941) tax | $22,989.48 |
| 2007 civil (Section 6721) penalty | $2,053.72 |
| **Total** | **$1,407,367.77** |

ECF No. 64-2. With additional interest accrued pursuant to Internal Revenue Code Sections 6601

and 6621, the Government contends that as of April 15, 2020, Pick-Ups' tax liability is

$1,777,047.98 plus interest, statutory additions, and penalties thereon until paid.

| Tax | Date Assessed | Tax/Penalty Assessed | Failure to Pay Penalty | Accrued Interest | Balance |
|---|---|---|---|---|---|
| 1120 (2006) | 10/29/13 | 794,647.27 | 152,743.54 | 779,815.68 | 1,727,206.49 |
| 941 (Q4 2007) | 01/05/09 | 10,520.94 | 1,848.57 | 7,531.82 | 19,901.33 |
| 941 (Q1 2008) | 01/05/09 | 14,633.83 | 2,660.69 | 9,823.47 | 27,117.99 |
| 6721 (2007) | 08/02/10 | 2,078.00 | 0.00 | 744.17 | 2,822.17 |
| | | | | | **$1,777,047.98** |

In response, Defendants present no evidence to rebut the presumption of validity of the

Forms 4340. Indeed, Defendants raise no arguments—much less competent summary judgment

evidence—regarding the Form 941 or Section 6721 portions of the tax assessment, or regarding

the Government's ability to impose additional penalties and interest pursuant to the Internal

Revenue Code. Instead, Defendants argue only that "the income (Form 1120) tax liability

determined by the U.S. Tax Court is incorrect and not barred by res judicata." ECF No. 66 ¶ 1. As

discussed above, Defendants' position is plainly wrong—the Tax Court's determination of Pick-

Ups' 2006 income tax liability is res judicata. And even if it wasn't, Defendants' "[m]ere conclusory allegations" that the income tax determination was "incorrect" is "not competent summary judgment evidence, and thus [is] insufficient to defeat a motion for summary judgment." *Walker*, 375 F. Supp. 2d at 535 (citing *Eason*, 73 F.3d at 1325). Accordingly, the Government has met its summary judgment burden and Defendants have failed to show there is a genuine issue for trial as to Pick-Ups' tax liability. The Court finds as a matter of law the Government is entitled to a judgment against Pick-Ups in the amount of $1,777,047.98 as of April 15, 2020, plus penalties, statutory additions, and prejudgment and post-judgment interest thereon until paid. *See* 26 U.S.C. § 7402 (authorizing district courts to render judgments "as may be necessary or appropriate for the enforcement of the internal revenue laws"); 26 U.S.C. §§ 6601, 6621(a)(2), 6622 (providing for the imposition and calculation of interest).

b. **As a matter of law, Mr. Lothringer is the alter ego of Pick-Ups and therefore personally liable to the United States for all of the taxes assessed against Pick-Ups.**

Next, the Government seeks to hold Mr. Lothringer personally liable for the taxes assessed against Pick-Ups. The Government argues that Mr. Lothringer is the "alter ego" of Pick-Ups, and that under the alter ego doctrine the Government is entitled to disregard the corporate form and to a judgment that the corporate veil is pierced between Pick-Ups and Mr. Lothringer. ECF No. 64 at 12–17. Defendants respond that Mr. Lothringer is not the alter ego of Pick-Ups, and raise several disputes with facts upon which the Government relies.

"The fundamental concept of corporate law is that the corporation is a wholly separate, legal entity. As such, the corporation, and not its shareholders, is liable for its own debts and torts." *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994) (citing *Krivo Indus. Supply Co. v. National Distillers and Chem. Corp.*, 483 F.2d 1098, 1102–03 (5th Cir. 1973)). Under Texas law, a court may "ignore the corporate form when it 'has been used as part

13

of a basically unfair device to achieve an inequitable result.'" *Jonnet*, 11 F.3d at 67 (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)). This includes cases where "the corporation is the alter ego of its owners and/or shareholders." *Jonnet*, 11. F.3d at 67.

"In determining whether an alter ego relationship exists, the court should focus on the relationship between the corporation and the…individual that allegedly abused corporate formalities." *Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 245 (5th Cir. 1990). The Texas Supreme Court in *Castleberry* laid out the framework for determining when the alter ego doctrine applies to pierce the corporate veil:

> Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice. It is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes. Alter ego's rationale is: "if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors."

*Castleberry*, 721 S.W.2d at 272. Subsequent amendments by the Texas legislature "overruled *Castleberry* to the extent that a failure to observe corporate formalities is no longer a factor in proving the alter ego theory…." *Jonnet*, 11 F.3d at 68; *see also* TEX. BUS. ORGS. CODE § 21.223(a)(3) ("A holder of shares…may not be held liable to the corporation or its obligees with respect to…any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality….").[5] Thus, "to pierce the corporate veil using the alter ego

---

[5] Defendants claim in their response that *Castleberry* was superseded by statute and is "outdated law." ECF No. 66 at 4 (citing *Willis v. Donnelly*, 199 S.W.3d 262, 271–72 (Tex. 2006)). *Castleberry* was narrowed but not entirely superseded by the Texas legislature in 1989. The current Texas Business Organizations Code (1) prohibits piercing the corporate veil on the basis of failure to observe corporate formalities, and (2) limits the circumstances under which a shareholder may be held liable for a corporation's *contractual* obligations. TEX. BUS. ORGS. CODE § 21.223. Contractual obligations of a corporation are not at issue in this case; other than the failure to observe corporate formalities, the *Castleberry* framework remains relevant for determining alter ego status under Texas law and in this

theory…the claimant must look to the remaining factors outlined in *Castleberry*" other than the disregard of corporate formalities. *Jonnet*, 11 F.3d at 68.

The Fifth Circuit has also developed a laundry list of factors for determining alter ego status in the context of whether a subsidiary company is the alter ego of a parent company, including whether:

(1)  the parent and the subsidiary have common stock ownership;
(2)  the parent and the subsidiary have common directors or officers;
(3)  the parent and the subsidiary have common business departments;
(4)  the parent and the subsidiary file consolidated financial statements and tax returns;
(5)  the parent finances the subsidiary;
(6)  the parent caused the incorporation of the subsidiary;
(7)  the subsidiary operates with grossly inadequate capital;
(8)  the subsidiary pays the salaries and other expenses of the subsidiary;
(9)  the subsidiary receives no business except that given to it by the parent;
(10) the parent uses the subsidiary's property as its own;
(11) the daily operations of the two corporations are not kept separate; and
(12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder board meetings.

*See Century Hotels v. U.S.*, 952 F.2d 107, 110 n.5 (5th Cir. 1992) (citing factors developed in *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985)). Applying these factors strictly to determine whether an individual person is the alter ego of a corporation may yield similar results to jamming a square peg into a round hole; nevertheless, the factors can be informative to such an analysis. *See, e.g.*, *United States v. L & L Int'l, Inc.*, No. CV H-17-923, 2020 WL 168852, at *3 (S.D. Tex. Jan. 13, 2020) (applying *Century Hotels* factors to determine whether individual and corporation were in an alter-ego relationship). In any event, there is "no litmus test" for determining alter ego status, and to do so requires looking "to the totality of the circumstances in considering the factors." *Century Hotels*, 952 F.2d at 110; *see also Garcia United States v. Beck*,

---

case. *See also Willis*, 199 S.W.3d at 272 n.12 (discussing focus on liability for contractual obligations as impetus for amendments to statute).

No. SA-11-CA-45-FB, 2011 WL 13112076, at *16 (W.D. Tex. Nov. 3, 2011) ("To determine whether the alter ego relationship exists between the corporation and the individual, the court employs a 'totality of the circumstances test,' and analyzes a combination of factors…"), *report and recommendation adopted in part, rejected in part sub nom. DeBeck United States v. Beck*, No. SA-11-CA-45-FB, 2012 WL 12861081 (W.D. Tex. Mar. 20, 2012).

The Government, applying *Castleberry* and the *Century Hotel* factors, points to a host of evidence in the record to demonstrate Mr. Lothringer was the alter ego of Pick-Ups. Mr. Lothringer does not dispute the following facts:

- Mr. Lothringer was the only shareholder, officer, director, and owner of Pick-Ups.
- Mr. Lothringer exercised complete dominion and control over Pick-Ups.
- Mr. Lothringer organized Pick-Ups.
- Mr. Lothringer failed to observe certain corporate formalities, including failing to file federal income tax returns and Texas Franchise Tax Public Information Reports for various years.
- Mr. Lothringer assumed a $52,000 debt of Pick-Ups owed to a Mr. Garza.
- Mr. Lothringer loaned $739,225 to Pick-Ups, and Pick-Ups still owed Mr. Lothringer $483,848 as of December 2002.

*See* ECF No. 66 at 2–3.

Mr. Lothringer does dispute some of the other facts the Government relies on. The Government claims Mr. Lothringer used the Pick-Ups bank account to pay his personal and household expenses, resulting in his "enjoy[ing] the benefits of Pick-Ups." ECF No. 64 at 15. The Government relies upon the declaration of Simon Correa, an IRS Revenue Officer, who was assigned to collect the taxes owed by Pick-Ups. ECF No. 64-19. According to Correa, Mr. Lothringer used the Pick-Ups account to pay personal expenses, including payments to Wal-Mart, Walgreens, Home Depot, and HEB. *Id.* ¶¶ 14, 16; *see also id.* at 45–56 (copies of checks written from the Pick-Ups account). In response, Mr. Lothringer contends some of these allegedly

"personal" expenses were actually for Pick-Ups. ECF No. 66-1 at 1–7, Affidavit of Mr. Lothringer [hereinafter, "ALothringer Affidavit"]; Lothringer Dep. 71:17–72:10.[6]

The Government also produced evidence of multiple checks written from the Pick-Ups account to Mrs. Lothringer, despite the fact that she was not an employee of Pick-Ups. Mr. Lothringer does not dispute that these funds were used for personal or household expenses, but contends that they qualify as either "constructive dividends" or "a non-taxable return of capital." ECF No. 66 at 3. Mrs. Lothringer testified that she was paid out of the Pick-Ups account so that she could pay for household bills; Mr. Lothringer acknowledged that testimony in his own deposition, and that he was "assuming that's what it went for" but he wasn't sure. *See* Lothringer Dep. 70:24–71:6; ECF No. 64-20, Deposition of Janet Lothringer 44:4–9; 50:2–52:6 (Q: "And you said you stopped working for Pick-Ups in 2006. Why would you be getting a check from Pick-Ups in 2010?" A: "Money to pay our bills with." … Q: "In fact, all those checks that you've seen in that exhibit, they've all been to you to pay household bills, right?" A: "Yes, ma'am.").

The Government also produced evidence that loans paid from the Pick-Ups account were for notes financed individually by Mr. Lothringer and not for Pick-Ups business: $464.98 at Southside Credit Union, $797.56 at First Mark Credit Union, and $71,000 at Cars Financial. ECF No. 64-19 ¶ 14. Mr. Lothringer responds that the $71,000 check issued to Cars Financial was to correct an erroneous wire payment in that amount that was sent to Pick-Ups but intended for Cars Financial. ALothringer Affidavit at 1–2. He offers no other response to the Government's evidence that he issued checks from the Pick-Ups account for his personal loans.

---

[6] When asked about the allegedly "personal" expenses discussed in the Correa declaration, Mr. Lothringer denied that any of them were personal. He testified that the HEB check was for electrical at a Pick-Ups location, the Home Depot check was for a business credit card, the Walgreens expense was for an employee's medication, and the Walmart expense was not for groceries or anything personal. ALothringer Dep. #1 71:17–72:10.

The Government also claims Pick-Ups failed to keep books and records, as demonstrated by its production of only a single page of minutes from one board of director and shareholder meeting in 2002 and by the corporate by-laws being unsigned. ECF Nos. 64 at 15; 64-29; 64-30. Defendants dispute that their inability to produce such records supports an inference that the records never existed, and Mr. Lothringer claims that corporate records were kept throughout the life of the business, but due to the passage of time and the moving of company property, such records cannot be located. ALothringer Affidavit ("I did regularly kept [sic] records of company meeting minutes and other related company documents. In September of 2007, I left the PickUps, Inc. records in the care of Larry Berkman, our company attorney at the time. Due to the passage of time and the moving of company property, I am unable to locate the company records."). But, Mr. Lothringer's affidavit contradicts his answers to the Government's interrogatories and his own deposition testimony. ECF No. 64-14 at 33 (answering "Arthur Lothringer" in response to interrogatory asking to identify all individuals who are in possession of documents pertaining to Pick-Ups); ECF No. 68-2 (Mr. Lothringer testifying he has 65 boxes of records related to Pick-Ups). Such a sham affidavit cannot be used to create a genuine issue of material fact to defeat summary judgment. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) ("[A] plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation.").

The Government presents, as further evidence of Mr. Lothringer's commingling of funds, the fact that Mr. Lothringer borrowed $200,000 from his brother and deposited it in the Pick-Ups account. ECF No. 64 at 16. Mr. Lothringer responds the $200,000 loan was made from his brother to Pick-Ups for use by the business. His brother seems less sure of the line between the corporation and the individual. ECF No. 66-2 10:9–13 ("I loaned them to…to the company. I…loaned them

to my brother, you know, who, you know, was Pick-Ups, Inc."); *see also* ECF No. 66-1 at 10 (unsigned and undated promissory note showing Pick-Ups, Inc. as the maker); ECF No. 66-1 at 8, Affidavit of Michael Lothringer ("I testified that I loaned money to Pick-Ups, Inc. and that I was not aware of any instances where my brother, Arthur Lothringer, used the Pick-Ups, Inc. bank account to pay for his personal expenses.").

Finally, the Government claims Mr. Lothringer operated Pick-Ups in an illegal manner because he pleaded nolo contendere to the felony offense of providing false or incorrect information on an application for a certified copy of an original certificate of title. ECF No. 64 at 21–22. Mr. Lothringer responds that his conviction was successfully discharged following an order of deferred adjudication, and that this alone is not determinative of alter ego status. ECF No. 66 at 5; ECF No. 66-2 at 18.

Although some factual disputes exist, the Court finds that the undisputed and unrefuted evidence is sufficient to demonstrate that Mr. Lothringer was the alter ego of Pick-Ups as a matter of law. It is clear that there was "such unity between corporation and individual that the separateness of the corporation…ceased and holding only the corporation liable would result in injustice." *Castleberry*, 721 S.W.2d at 272. Given the "totality of the circumstances" shown by the summary judgment evidence, the Government is entitled to summary judgment against Mr. Lothringer. *See Century Hotels*, 952 F.2d at 110; *Beck*, 2011 WL 13112076, at *16.

      c.  <u>The Government is entitled to an order foreclosing the tax liens, and for the sale of real and personal property owned by the Lothringers, for payment of the taxes.</u>

The Government asks the Court to order the foreclosure its tax liens and the sale of Mr. Lothringer's assets in collection of the federal taxes assessed against Pick-Ups. ECF No. 64 at 17. Defendants appear to concede that if Mr. Lothringer is found to be the alter ego of Pick-Ups then

the Government is entitled to foreclose the tax liens against Mr. Lothringer's property. ECF No. 66 at 6.

> Section 6321 of the Internal Revenue Code provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. It is well-established that the Government may regard an alter ego's assets as those of the taxpayer subject to a lien under Section 6321, and that the Government is entitled to levy upon assets held in the alter ego's name in satisfaction of the taxpayer's tax liability. *See G. M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977).

In this case, the Government perfected liens against Pick-Ups and against Mr. Lothringer as its alter ego. ECF No. 64-3 ¶ 4. Because the Court has determined Mr. Lothringer is the alter ego of Pick-Ups, he is a "person liable to pay" under Section 6321. Under Section 7403 of the Internal Revenue Code, the Court is empowered to order the sale of a delinquent taxpayer's property. *See* 26 U.S.C. § 7403 (providing for judicial order of sale); *United States v. Rodgers*, 461 U.S. 677, 697 (1983) ("the Government's right to seek a forced sale of the entire property in which a delinquent taxpayer had an interest does not arise out of its privileges as an ordinary creditor, but out of the express terms of § 7403. Moreover, the use of the power granted by § 7403 is…the exercise of a sovereign prerogative, incident to the power to enforce the obligations of the delinquent taxpayer himself, and ultimately grounded in the constitutional mandate to 'lay and collect taxes.'"). Therefore, the Government is entitled to an order foreclosing the federal tax liens and directing the sale of Mr. Lothringer's properties to pay the taxes owed.

d. <u>Mrs. Lothringer is entitled to compensation for her homestead interest out of the sale of the Lothringers' residential real property, to be determined after the sale.</u>

Finally, the Government asks that if the Court orders the sale of the Lothringers' residential real property, Mrs. Lothringer be paid her homestead interest out of the proceeds of the sale in accordance with the method laid out by the Fifth Circuit in *Harris v. United States*. ECF No. 64 at 19.[7] The Government asks that the Court find Mrs. Lothringer has a homestead interest that should be compensated, but that the value of her interest should not be determined until after the property is sold. ECF No. 64 at 19. In response, Defendants agree that Mrs. Lothringer is entitled to a homestead interest in the residential real property of the Lothringers and also argue she is entitled to a community property interest in the lot adjacent to their residential property. ECF No. 66 at 7. The Government replies that Mrs. Lothringer is not entitled to any community property interest in the non-homestead property. ECF No. 68 at 25.

The law supports the Government's position: the Government is entitled to "enforce the lien of the United States" and to "subject <u>any</u> property, <u>of whatever nature</u>, of the delinquent [taxpayer], or in which he has <u>any</u> right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403 (emphasis added). In determining what property a delinquent taxpayer "owns," state law controls. *United States v. Mitchell*, 403 U.S. 190, 197 (1971). Under Texas law, "the United States' judgment liens, whether for federal taxes or federal criminal debt, attach to…community property defined under Texas law" including "all of the couple's jointly managed community property." *United States v. Elashi*, 789 F.3d 547, 551 (5th Cir. 2015). Texas law also affords special protection in the form of "homestead rights," which exempts homestead property

---

[7] In *Harris*, the Fifth Circuit explained that in cases such as this "the IRS [is] entitled to the value of [the taxpayer's] interest in the homestead to the extent of its lien… The IRS [is] also entitled to the remainder interest in the property at the termination of [the spouse's] life estate." *Harris v. United States*, 764 F.2d 1126, 1131 (5th Cir. 1985). The joint-life tables in the Code of Federal Regulations "account for the fact that more than one person has an interest in the life estate" and should be used to value the spouse's homestead interest properly. *Id.*

from the reach of most creditors. *See United States v. Rodgers*, 461 U.S. 677, 684 (1983) (discussing Texas law). This state law protection, however, does not bar the federal government from seeking a judicial sale of the entire property, even when a non-liable spouse does not owe any of the tax liability. *Id.* at 701. In such cases, the Government can force the sale of homestead property to satisfy tax liabilities, and the loss of the non-liable spouse's homestead interest must be compensated. *Id.* at 698.

Here, it is undisputed that Mr. Lothringer owns the two lots on Jo Marie Street jointly with Mrs. Lothringer, and that these are jointly managed community property under Texas law. It is also undisputed that only one of those properties (located at 122 Jo Marie Street) is the Lothringers' homestead. As such, the Government is entitled to foreclose its liens on those properties and use the proceeds from the sale to satisfy Mr. Lothringer's tax liabilities. The Government must compensate Mrs. Lothringer for the loss of her homestead rights, but not for any other property interest she may have under state law. *See United States v. Orr*, 336 F. Supp. 3d 732, 740 (W.D. Tex. 2018) (concluding the IRS may reach and sell taxpayer's separate property and all property in which he owned a community interest to satisfy tax liabilities); *see also Flashi*, 789 F.3d at 551; *United States v. Davis*, 681 F. App'x 338, 341 (5th Cir. 2017) (applying Louisiana law to conclude community property was subject to seizure and sale under 26 U.S.C. § 7403). Accordingly, the Court will order the proceeds of the sale of the homestead property be deposited in the Court registry, to be paid to the Government and to Mrs. Lothringer following the determination of her homestead interest.

## CONCLUSION

For the reasons stated herein, the Government's Motion for Summary Judgment (ECF No. 64) is **GRANTED**. The Court **ORDERS** as follows:

- The Government is awarded a judgment against Pick-Ups in the amount of $1,777,047.98, plus penalties and statutory additions, and additional prejudgment and post-judgment interest thereon, from April 15, 2020 until paid.

- Mr. Lothringer is declared the alter ego of Pick-Ups and is personally liable for the tax debts of Pick-Ups.

- The federal tax liens against the properties of Mr. Lothringer as the alter ego of Pick-Ups are hereby foreclosed.

- The sale of Mr. Lothringer's properties located at 122 Jo Marie Street, 114 Jo Marie Street, and the cabin permit are hereby authorized pursuant to 26 U.S.C. § 7403.

- The proceeds from the sale of the Lothringers' homestead property at 122 Jo Marie Street are to be deposited in the Court registry. Upon deposit, the parties shall confer to determine Mrs. Lothringer's homestead interest out of the sale. Within 30 days of deposit, the parties shall submit a proposed determination of Mrs. Lothringer's homestead interest for the Court's consideration, and a proposed order for the disbursement of funds from the registry.

- All remaining deadlines and settings, including trial, are hereby vacated.

- The Court shall retain jurisdiction over this case in order to oversee the sale of the properties and determine Mrs. Lothringer's homestead interest. The Clerk is directed to administratively close this case.

- The Government may submit a proposed final judgment for consideration by the Court **within ten days** of this Order.

It is so **ORDERED**.

**SIGNED** this 11th day of August, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE